**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 01-40599**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellant,**

**VERSUS**

**JEREMY JEROME ARCLESE,**

**Defendant-Appellee.**

---

Appeal from the United States District Court
For the Eastern District of Texas

---

(1:00-CR-96-4)

June 13, 2002

Before DUHÉ, DeMOSS, and CLEMENT, Circuit Judges.

DeMOSS, Circuit Judge:[*]

The defendant, Jeremy Arclese, along with Cliffon Weber, Andre McClelland, and Jonathan Williams, was indicted on June 7, 2000, for carjacking with intent to cause death or serious bodily harm. On November, 22, 2000, Arclese pleaded guilty to the carjacking, but specifically disavowed any involvement in his co-defendant

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Weber's use of a firearm to shoot the carjacking victim. He did not dispute the fact that he fled with Weber and the other co-defendants in the victim's vehicle after the shooting.

The district court accepted Arclese's guilty plea and ordered a pre-sentencing report (PSR) be prepared. The PSR determined that, pursuant to § 2B3.1 of the United States Sentencing Guidelines, a base-offense level of 20 applied. *See* U.S.S.G. § 2B3.1 (governing robbery offenses). The PSR also recommended several specific offense characteristics under § 2B3.1 be applied to enhance Arclese's sentence. Specifically, it recommended a 13-level enhancement because a firearm was discharged (7 points), the victim sustained serious bodily injury (4 points), and a carjacking occurred (2 points). *See* U.S.S.G. § 2B3.1(b)(2), (b)(3)(B), & (b)(5). Arclese objected to these proposed enhancements, asserting that he did not join in the shooting and arguing that his very limited involvement in the crime began after the shooting when he fled the scene as a passenger in the victim's car. The district court sustained Arclese's objections and declined to enhance his sentence. The court concluded that the violent acts of Arclese's co-conspirator Weber were not sufficiently foreseeable to Arclese to justify enhancing Arclese's sentence. *See* U.S.S.G. § 1B1.3(a)(1)(B). Accordingly, Arclese was sentenced, with an

2

offense level of 17,[2] to 37 months' imprisonment and 3 years' supervised release.  The government appeals here.

The government asserts jurisdiction under 18 U.S.C. § 3742(b)(2), which permits the government to appeal a final sentence if it "was imposed as a result of an incorrect application of the sentencing guidelines."[3]  In accordance with § 3742's requirements, the government secured the Solicitor General's approval to prosecute this appeal.  Section 3742(e) defines the parameters of our review here:

> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e).

Having carefully reviewed the entire record in this case, and having fully considered the parties' respective briefing, we conclude that the government has failed to demonstrate that the district court's findings were clearly erroneous.  Accordingly, giving "due deference to the district court's application of the

---

[2]  The offense level for robbery in 20, and Arclese received a 3-point downward departure for acceptance of responsibility.

[3]  The government's brief asserts jurisdiction under 18 U.S.C. §3742(b)(1), which permits the government to appeal a final sentence imposed in "violation of law."  However, the government clarified during oral argument that it was actually relying on §3742(b)(2)'s provisions for appealing incorrect sentencing guideline applications.

guidelines to the facts," *see* ***id.***, we AFFIRM the defendant's sentence.

Edith Brown Clement, Circuit Judge, dissenting:

Jeremy Arclese pled guilty to participating in a carjacking conspiracy during which another conspirator, Cliffon Jamail Weber, shot and injured the car's owner, John Ruffin. The District Court rejected the recommendations of the pre-sentencing report that Arclese's sentence be enhanced to reflect two specific offense characteristics: that a firearm was discharged and that the victim sustained serious bodily injury. The District Court held that since the shooting was not foreseeable to Arclese, he should not be held accountable for those specific offense characteristics.

It was clear error for the District Court to conclude that the shooting was unforeseeable because Arclese pled guilty to conspiring to commit a crime whose very definition requires an "intent to cause death or serious bodily harm." 18 U.S.C. § 2119 (2002). I would reverse.

I.

Under the Sentencing Guidelines, the punishment for a conspiracy is determined by the base level for the substantive offense (here, robbery), "plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." See U.S. SENTENCING GUIDELINES MANUAL § 2X1.1 (2001). However, the "reasonable certainty" standard applies only

to conduct that was allegedly intended to occur, not conduct that actually *did* occur. See United States v. Cabrera, 288 F.3d 163, 169 (5th Cir. 2002); see also U.S. Sᴇɴᴛᴇɴᴄɪɴɢ Gᴜɪᴅᴇʟɪɴᴇs Mᴀɴᴜᴀʟ § 2X1.1, application note 2 (noting the distinction between offense characteristics "specifically intended" and those that "actually occurred"). The sentencing enhancements at issue are occurrences, not intentions, so the first question for the sentencing court is whether those occurrences happened, and the proper standard is whether they happened by a preponderance of the evidence. Cabrera, 277 F.3d at 169.

There can be no question that a firearm was discharged and that bodily injury occurred. Weber was convicted by a jury of the shooting, and Ruffin, the victim, testified at Arclese's sentencing hearing. Arclese does not contest these facts.

## II.

The inquiry does not end there, however, because a defendant is only accountable for facts which constitute "relevant conduct" under §1B1.3 of the Sentencing Guidelines. Subsection (a)(1)(B) provides that "in the case of a jointly undertaken criminal activity" sentence enhancements shall be determined on the basis of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."

Because the shooting was both in furtherance of conspiracy and

reasonably foreseeable, Arclese should have been held accountable. The district court found that the shooting was not foreseeable, and we are obliged to defer to the district court's factfinding unless "clearly erroneous." 18 U.S.C. § 3742(e) (2002). This is a case of clear error.

Arclese was indicted and pled guilty to one count of conspiracy to violate 18 U.S.C. § 2119(2), the subsection of the federal carjacking statute that applies when "serious bodily injury... results." Carjacking, a form of robbery, is defined as taking a motor vehicle by either "force and violence" or "intimidation" with "the intent to cause death or serious bodily injury." 18 U.S.C. § 2119. The District Court even granted a 2-point enhancement to Arclese's sentencing level because the robbery involved a carjacking, also defined in the guidelines to require "force and violence" or "intimidation." See U.S. SENTENCING GUIDELINES MANUAL § 2B3.1, application note 1.

It has long been established that "a guilty plea is an admission of all the elements of a formal criminal charge." See McCarthy v. United States, 394 U.S. 459, 466 (1969); see also United States v. Trevino, 131 F.3d 1140, 1141 (5th Cir. 1997) ("By entering his plea of guilty, [defendant] admitted all the elements of the charge contained in this conspiracy count of the indictment."). Arclese does not assert that his plea was anything but knowing and voluntary, so he is deemed to have admitted the elements of the conspiracy offense.

-7-

One element of a conspiracy charge is that the defendant have "*at least* the degree of criminal intent necessary for the substantive offense itself." See <u>United States v. Ingram</u>, 360 U.S. 672, 678 (1959) (emphasis in original) (citation omitted); <u>see also</u> <u>United States v. Peterson</u>, 244 F.3d 385, 389 (5th Cir. 2001); <u>United States v. Dadi</u>, 235 F.3d 945, 950 (5th Cir. 2000). Arclese is deemed to have admitted to having had an intent to cause bodily harm.

Logically speaking, it is impossible that Arclese both intended to cause bodily harm yet could not have foreseen that it would actually occur. And practically speaking, the very nature of a criminal robbery conspiracy is such that one's co-conspirator might engage in unplanned violence. The Sentencing Guidelines reflect this common sense proposition in one of the examples.

> For example, two defendants agree to commit a robbery and, during the course of that robbery, the first defendant assaults and injures a victim. The second defendant is accountable for the assault and injury to the victim (<u>even if the second defendant had not agreed to the assault and had cautioned the first defendant to be careful not to hurt anyone</u>) because the assaultive conduct was in furtherance of the jointly undertaken criminal activity (the robbery) and was reasonably foreseeable in connection with that criminal activity (<u>given the nature of the offense</u>).

§ 1B1.3, application note 2 (emphasis added).

Courts have uniformly agreed that violence is inherent in robberies and found such occurrences to be foreseeable and

accountable to a defendant. See United States v. Hickman, 151 F.3d 446, 463 (5th Cir.1998) (murder during a restaurant robbery), *reh'g granted and opinion vacated*, 165 F.3d 1020 (1999), *aff'd by an equally divided court*, 179 F.3d 230 (1999) (per curiam); United States v. Parker, 241 F.3d 1114, 1118 (9th Cir. 2001) (physical restraint in a bank robbery); United States v. Cover, 199 F.3d 1271, 1274-75 (11th Cir. 2000) (carjacking as part of an unplanned escape); United States v. Lambert, 995 F.2d 1006, 1009 (10th Cir. 1993) (death threat made to bank teller); United States v. Dixon, 982 F.2d 116, 120 (3rd Cir. 1992) (feigned gun possession in a bank robbery); United States v. Fitzwater, 896 F.2d 1009, 1012 (6th Cir. 1990) (bank teller's injury from being forced to lie on the floor during a robbery).

In fact, courts have held defendants accountable for harms caused by persons not involved in the crime, as long as the defendant or another conspirator "put into motion" events risking harm. See United States v. Molina, 106 F.3d 1118, 1122-25 (2d Cir. 1997); United States v. Williams, 51 F.3d 1004, 1011-12 (11th Cir. 1995), *overruled on unrelated grounds by* Jones v. United States, 526 U.S. 227 (1999). In Molina, defendant was held accountable for the bodily injury that resulted when, in the course of an armored car robbery, a guard accidently shot an innocent bystander. 106 F.3d at 1122-25. In Williams, defendant's attempted carjack ran afoul when the passenger-side occupant pulled a weapon concealed

beneath his seat and accidently shot the driver, and the Eleventh Circuit upheld a sentencing enhancement under the federal carjacking statute because death resulted. 51 F.3d at 1011-12.

These cases establish that defendants are to be held accountable for certain risks inherent in the particular criminal enterprise they undertake because such risks are always foreseeable. The risk that bodily injury will occur inheres in the crime of carjacking because the crime involves, by definition, "intent to cause death or serious bodily harm." 18 U.S.C. § 2119.

Because the District Court committed clear error in failing to hold Arclese accountable for the facts which resulted from the risks inherent in the crime to which he pled guilty, I respectfully dissent.