# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 30, 2009

Charles R. Fulbruge III
Clerk

No. 08-50758
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

FRANK ZUKI SOLIZ

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:07-CV-239
USDC No. 1:05-CR-67-10

Before KING, DAVIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Frank Zuki Soliz, Jr., federal prisoner # 57649-180, pleaded guilty pursuant to a written plea agreement to one count of conspiracy to possess with intent to distribute a number of controlled substances. Due to the quantities of drugs involved, which included 500 grams or more of methamphetamine and one kilogram or more of heroin, Soliz faced a mandatory minimum sentence of ten years. R. 1, 31-32, 285; 21 U.S.C. § 841(b)(1)(A)(i), (viii).

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

The plea agreement provided, in pertinent part, that Soliz agreed to cooperate fully and provide information concerning his knowledge of any drug-trafficking or other crimes. The Government agreed to move for a downward departure under U.S.S.G. § 5K1.1 or Rule 35 if Soliz complied with the plea agreement and provided substantial assistance through truthful testimony that led to actual prosecution. The plea agreement stated that Soliz understood that the decision to file such a motion was at the sole discretion of the Government, that the Government would not be under any obligation to file the motion if Soliz did not cooperate, and that the court would not be bound by any such motion and could overrule it.

At rearraignment, the magistrate judge (MJ) informed Soliz that the statute in the case provided for "a mandatory minimum sentence in this case of ten years in prison." When asked if he understood, Soliz replied, "Yes, sir." The MJ then stated, "you understand that your sentence in this case, according to the statute, will be at least ten years and could be up to life in prison. You understand that?" Soliz answered, "Yes, I do." The MJ discussed the effect of the Sentencing Guidelines and told Soliz that nobody was in a position to tell him what the guidelines range was at that point; Soliz replied that he understood. The MJ then told Soliz, "your lawyer or others may have given you some idea" of how the Guidelines might apply, but that "those are not guarantees, because only the court can do that." When asked if he understood, Soliz replied affirmatively. The MJ admonished Soliz that the court did not have to follow the guidelines range and could sentence him above or below the guidelines; again, Soliz affirmed that he understood. The MJ then said, "So as a bottom line for you is that the only thing you know at this point is that your sentence will be a mandatory minimum of ten years and could be up to life. You understand that?" Soliz answered, "Yes, sir."

After explaining other aspects of sentencing, such as supervised release and the potential for fines, the MJ asked Soliz, "Do you have any questions about

2

any of the punishment that you're going to face if you enter a guilty plea?" Soliz answered, "No, sir, I don't."

The Government then accurately summarized the terms of the plea agreement, including the provisions regarding a downward departure motion in the event of Soliz's cooperation, his duty to cooperate fully, the Government's discretion not to file the motion, and the court's ability to overrule the motion. Soliz confirmed that he had read the plea agreement, reviewed it with counsel, and understood it. The MJ then specifically admonished Soliz regarding his cooperation, reiterating that unless the Government was satisfied, it did not have to ask the court to give him credit for cooperating, and that even if the Government filed the motion, the court would make its own determination. Soliz understood. The MJ then asked Soliz a number of questions regarding the voluntary nature of his plea, including whether anyone had made any promise or prediction as to what his sentence would be. Soliz responded, "No, sir." *Id.*

The Government did not file a motion for a downward departure. However, at sentencing, counsel asked the court for a safety-valve departure below the mandatory minimum sentence under 18 U.S.C. § 3553(f) based on Soliz's assistance. The Government responded that Soliz had failed to provide truthful information when debriefed. The court then heard testimony from a DEA agent that Soliz was not truthful during debriefing regarding his involvement in a cocaine transaction, despite wiretaps showing his involvement. The court denied a safety valve reduction and imposed the mandatory minimum sentence of 120 months.

Soliz did not appeal. Within one year of entry of judgment, Soliz filed a sworn 28 U.S.C. § 2255 motion challenging the validity of his guilty plea and alleging ineffective assistance of counsel. According to Soliz, his guilty plea was induced by his attorney's promise that he would receive less than the mandatory minimum of 120 months if he pleaded guilty. He separately but relatedly argued that his counsel failed to "recognize" the mandatory sentence and erroneously

advised him that he faced a sentence of sixty to seventy months if he pleaded guilty, thus violating his right to effective assistance of counsel. In an unsworn supporting memorandum, he elaborated that counsel should have known that he faced the mandatory minimum of 120 months unless he was eligible for the safety valve, and that because he was determined not to be eligible, his counsel should not have advised him to plead guilty. Thus, he argued, his counsel rendered ineffective assistance and his guilty plea was involuntary. *Id.* at 254-56. He requested an evidentiary hearing.

In support, Soliz attached a letter that he wrote to his counsel, Bristol Myers, stating that Myers and another attorney, Chad Van Cleave, had told him he would not get ten years if he pleaded guilty. He also attached an affidavit from his mother saying that Myers assured her and her daughter that Soliz would get fewer than ten years if he pleaded guilty, so she convinced Soliz that a guilty plea was his best option. She averred that in light of Myers's promises, it came as a surprise at sentencing that Soliz received a 120-month sentence.

The Government filed a response, asserting that Soliz's claims were contradicted by his testimony at rearraignment and that it was Soliz's own failure to cooperate, rather than the conduct of his counsel, that resulted in his 120-month sentence. In support, the Government attached an affidavit from Myers, stating that he was retained to represent Soliz, substituting for appointed counsel Chad Van Cleave. According to Myers, Soliz was well aware of the ten-year mandatory minimum before Myers was retained and that Soliz knew that a Government motion for downward departure in exchange for his assistance could be a way to avoid the minimum. Myers also stated that he reviewed the plea agreement thoroughly with Soliz and that Soliz understood clearly that he would have to cooperate to obtain a downward departure. However, when given the opportunity during debriefing to disclose what he knew about a cocaine transaction, Soliz denied any knowledge or involvement,

despite wiretap evidence to the contrary. According to counsel, at that point, the case agents left the debriefing.

Soliz filed a response. Soliz reiterated his argument that Myers promised him he would get fewer than ten years if he pleaded guilty and that this was a disputed issue of fact warranting an evidentiary hearing. *Id.* at 307. He argued that he was unaware he was being debriefed to obtain a downward departure, and that the record, including the plea colloquy, did not show that a debriefing occurred or that case agents walked out. He also said he cooperated truthfully, and that he believed that if he pleaded guilty and provided sufficient truthful information for the court to accept his plea, he would get fewer than ten years.

The MJ issued a report and recommendation rejecting Soliz's claims, concluding that the evidence, including the plea agreement and plea colloquy, showed that Soliz understood that he had to cooperate to obtain a sentence below the mandatory minimum. Soliz filed objections, in which he stated that his counsel told him he would get less than 120 months "through the safety valve if I cooperated with the government and timely pled guilty to my conduct throughout the conspiracy charges." He said that after his attorney assured him and his parents he would get fewer than ten years, "he decided not to debrief." He alleged that he did not dispute anything at the plea colloquy because his attorney told him just to go along with everything. He again asked for an evidentiary hearing.

The district court conducted a de novo review, adopted the report and recommendation, and entered a judgment denying Soliz's § 2255 motion. Soliz filed a timely notice of appeal, the district court also denied a Certificate of Appealability (COA). *See* FED. R. APP. P. 4(a)(1)(B) (setting a 60-day limit to file a notice of appeal in civil cases in which the United States is a party). We granted a COA on the question of whether the district court erred by rejecting Soliz's claim that his guilty plea was rendered involuntary by counsel's alleged

promise that he would receive less than ten years in prison without holding an evidentiary hearing.

In his brief on the merits, Soliz again argues that his guilty plea was involuntary and cites cases discussing the standards for breach of a plea agreement. However, the only question upon which a COA was granted is whether the district court should have conducted an evidentiary hearing before rejecting Soliz's contentions. Our focus, then, is only on whether a hearing was required under the circumstances of this case.

The crux of this case in the district court was whether counsel erroneously promised Soliz that he would receive less than the mandatory minimum of ten years by pleading guilty and whether that promise affected Soliz's decision to plead guilty. In order for a guilty plea to be voluntary, the defendant must understand, inter alia, the consequences of his plea, including any mandatory minimum sentence. *See United States v. Still*, 102 F.3d 118, 122-23 (5th Cir. 1996); FED. R. CRIM. P. 11(b)(1)(I)

Soliz's assertions that he believed, based on counsel's promises, that he would receive a sentence of less than 120 months if he pleaded guilty are belied by the guilty plea colloquy, the written plea agreement, and Soliz's § 2255 pleadings. A defendant's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Thus, a defendant ordinarily may not refute his sworn testimony at a plea hearing while under oath. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). Further, official documents, such as a written plea agreement, are "entitled to a presumption of regularity and are accorded great evidentiary weight." *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985). Soliz affirmed at the plea hearing that he understood that he faced a ten-year mandatory minimum; that he could receive fewer than ten years only if the Government moved for a downward departure based on his cooperation; that even if the Government did move for a departure, the decision to grant the departure rested with the district

court; that any predictions of his sentence by anybody, including counsel, were not guarantees; and that nobody had made him any promises or predictions about his sentence. The written plea agreement, which Soliz verified having read and understood, likewise made clear that any downward departure depended on Soliz's cooperation and that the court could choose not to grant it.

Nevertheless, Soliz contends he may obtain relief based on the alleged contrary promises of his counsel and that the district court erred by failing to hold an evidentiary hearing on this point. A defendant may seek habeas relief based on alleged promises, even if inconsistent with his statements at the guilty plea hearing, if he proves "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *Cervantes*, 132 F.3d at 1110. With respect to an evidentiary hearing, a court should hold a hearing and make findings of fact, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." § 2255(b). In the context of a claim that a plea was rendered involuntary by promises of counsel, this court has held:

> If the defendant produces independent indicia of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties, [he] is entitled to an evidentiary hearing on the issue. If, however, the defendant's showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary.

*Cervantes*, 132 F.3d at 1110 (internal citations omitted).

The only evidence Soliz offered was his own letter to his attorney after the sentencing hearing and his mother's affidavit stating that Myers assured her and her daughter that if Soliz pleaded guilty, he would not receive ten years in prison, and that on that basis, she convinced Soliz to plead guilty. On appeal, he has not argued that he would offer any other evidence if he were permitted an evidentiary hearing in the district court.

On the other hand, Soliz himself stated in his pleadings that his attorney told him he would receive a sentence of fewer than ten years if he pleaded guilty *and* cooperated, providing truthful information to the Government. That is consistent with his plea agreement[1] and the colloquy. Further, his mother's statement that Myers promised he would get fewer than ten years if he pleaded guilty is not inconsistent with a finding that, in order to get a reduced sentence, Soliz had to plead guilty and cooperate. Thus, even if his mother testified credibly at an evidentiary hearing consistent with her affidavit, this evidence would be insufficient to overcome Soliz's sworn assertions before the court and the plea agreement. As a result, an evidentiary hearing was not required, and the district court did not err in failing to conduct one. *See Cervantes*, 132 F.3d at 1110-11*; see also United States v. Smith*, 844 F.2d 203, 208 (5th Cir. 1988) (holding that in light of plea agreement, affidavit of counsel, and defendant's sworn testimony that he understood he faced up to twenty years, defendant failed to show that his lawyer promised him a five-year sentence, despite eleven affidavits from family members and friends that defendant told him of that promise).

Accordingly, the judgment of the district court is AFFIRMED.

---

[1] It is noteworthy that Soliz is not and cannot claim a breach of the plea agreement, as the plea agreement clearly stated that the question of whether to file a motion was completely within the Government's discretion. Plea agreements are construed consistently "with the defendant's reasonable understanding of the agreement." *United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008) (internal citations and quotation marks omitted). It would not be reasonable for a defendant to expect the Government to file a discretionary motion on his behalf when he has failed to cooperate and provide truthful assistance to the Government.